**Supreme Court**

No. 2013-129-Appeal.
(PC 07-2434)

Wilfredo Nunez et al.                   :

v.                        :

Merrimack Mutual Fire Insurance Co.      :

NOTICE:   This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Wilfredo Nunez et al.                    :

v.                    :

Merrimack Mutual Fire Insurance Co.        :

Present: Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**O P I N I O N**

**Chief Justice Suttell, for the Court.**    The plaintiffs, Wilfredo Nunez and Janette Campos, appeal from summary judgment entered against them and in favor of Merrimack Mutual Fire Insurance Company (Merrimack or defendant).  This case came before the Supreme Court for oral argument, pursuant to an order directing the parties to show cause why the issues raised in this appeal should not be summarily decided.  After considering the written and oral submissions of the parties and after reviewing the record, we conclude that cause has not been shown and that this case may be decided without further briefing or argument.  For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

**I**

**Facts and Procedural History**

The following facts are undisputed.  On July 21, 2004, Wilfredo Nunez and Janette Campos entered into a purchase and sales agreement for a home located at 25 Oak St. in the City of Woonsocket.  A pre-closing inspection of the home revealed corrosion on the oil heating system in the basement.  The seller agreed to replace the heating system prior to the sale of the

home and hired a third party[1] to perform the work. Although the third party replaced the boiler and the oil tank, the oil feed line buried beneath the concrete floor in the basement, which transfers the oil from the tank to the burner, was not replaced.

On January 19, 2006, Nunez's sister-in-law accidentally shut off the boiler while in the basement doing laundry. Nunez then called his fuel oil dealer, Petro Oil, which responded to the call and noticed the smell of oil and staining at the feed line near the boiler. As a result of this discovery, plaintiffs initiated claims under their homeowners' insurance policy issued by Merrimack.

Merrimack's investigator, Richard Mansfield of Aegis Engineering Services, Inc. (Aegis), inspected the site in plaintiffs' basement and noted in his written report that "[t]he leak may have occurred over time and possibly prior to the insured[s'] purchase of the property." Mansfield further noted that "had [the system] been installed properly and in accordance with municipal codes, the feed line would have been replaced and the leak would likely have been eliminated or prevented prior to the insured[s'] purchase of the property." On February 1, 2006, Merrimack's testing firm, Taraco Precision Testing, Inc. (Taraco), pressure-tested and removed the feed line. In a letter to Merrimack's adjuster dated February 6, 2006, Mansfield reported the findings of Aegis and Taraco. The letter stated that the feed line was "severely corroded in several areas" and that "the corroded area[] was moist with fuel oil." Mansfield's letter further noted that "[his] observations and the Taraco pressure test indicate that the feed line has a very slow, weeping, corrosion leak * * *. It appears that the line has probably been leaking slowly for

---

[1] The name of the company hired to replace the heating system is not clear from the record. Merrimack refers to the party as Petro Holdings, Inc. Nunez, in a complaint filed in a separate matter, refers to the company as John Doe Corporation. In any event, the third-party repairer is not a party in the instant case, and its identity is not relevant to this appeal.

some time and was likely leaking before the insured purchased the home in July 2004." Merrimack thereafter denied plaintiffs' claim.

As grounds for denial, Merrimack relied upon a provision in plaintiffs' insurance policy that purports to exclude loss caused by corrosion. The pertinent language of the insurance policy reads as follows:

> "SECTION I – PERILS INSURED AGAINST
> "COVERAGE A – DWELLING and COVERAGE B – OTHER STRUCTURES
> "We insure against risk of direct loss to property described in Coverages A and B only if that loss is a physical loss to property. We do not insure, however, for loss:
> "* * *
> "2. Caused by:
> "* * *
> "e. Any of the following:
> "* * *
> "(3) Smog, rust or other corrosion, mold, wet or dry rot[.]"

On May 11, 2007, plaintiffs filed a complaint against Merrimack in Superior Court alleging breach of contract. On April 29, 2010, Merrimack filed a motion for summary judgment pursuant to Rule 56 of the Superior Court Rules of Civil Procedure.[2] On April 5, 2011, after a brief hearing on the motion, the trial justice issued a bench decision granting Merrimack's motion for summary judgment and dismissing plaintiffs' claims with prejudice. Final judgment entered on April 15, 2011.

The trial justice found that the language of the insurance policy clearly and unambiguously stated that "there is no coverage for loss caused by wear and tear, marring, deterioration and discharge of a pollutant." In granting Merrimack's motion for summary

---

[2] Although it appears that plaintiffs filed a cross-motion for summary judgment, that motion is not contained in the lower court file. However the file does contain Merrimack's objection to plaintiffs' motion, and the trial justice ultimately denied plaintiffs' cross-motion in an order filed on April 8, 2011.

judgment, the trial justice found that the undisputed evidence indicated that "plaintiffs' claim was caused by gradual corrosion of an oil fuel feed line, not a sudden or accidental loss, and therefore is barred by the clear and unambiguous terms of the policy." The plaintiffs thereafter filed a timely notice of appeal.

## II

### Standard of Review

"This Court reviews the grant of summary judgment 'de novo, employing the same standards and rules used by the hearing justice.'" Miller v. Saunders, 80 A.3d 44, 47-48 (R.I. 2013) (quoting Carreiro v. Tobin, 66 A.3d 820, 822 (R.I. 2013)). "We will affirm a lower court's decision only if, after reviewing the admissible evidence in the light most favorable to the nonmoving party, we conclude that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law." Id. at 48 (quoting Carreiro, 66 A.3d at 822). "[T]he nonmoving party bears the burden of proving by competent evidence the existence of a disputed issue of material fact * * * ." Id. (quoting The Law Firm of Thomas A. Tarro, III v. Checrallah, 60 A.3d 598, 601 (R.I. 2013)).

## III

### Analysis

The plaintiffs argue on appeal that the "cause of this loss is indisputably the unexpected, cracking/bulging or failure of [plaintiffs'] hot water system," and that the loss is therefore covered under their policy. In support, plaintiffs maintain that their loss is covered by a provision in the insurance policy, which provides in pertinent part:

> "SECTION I – PERILS INSURED AGAINST
> "* * *

"We insure against risk of direct loss to property described in Coverages A and B only if that loss is a physical loss to property. We do not insure, however, for loss:

"* * *

"2. Caused by:

"* * *

"e. Any of the following:

"* * *

"(5) Discharge, dispersal, seepage, migration, release or escape of pollutants unless the discharge, dispersal, seepage, migration, release or escape is itself caused by a Peril Insured Against under Coverage C of this policy.

"* * *

"COVERAGE C – PERSONAL PROPERTY

"We insure for direct physical loss to the property described in Coverage C caused by a peril listed below unless the loss is excluded in SECTION I – EXCLUSIONS.

"* * *

"13. Sudden and accidental tearing apart, cracking, burning or bulging of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water."

The plaintiffs also cite to Textron, Inc. v. Aetna Casualty and Surety Co., 754 A.2d 742 (R.I. 2000), which they contend stands for the proposition that the word "sudden," in the context of a pollutant-exclusion clause, simply means "'unexpected' or unforeseen from the standpoint of the insured." Therefore, they argue that because the loss was due to the release of oil from the oil feed line, and further, because the loss was unexpected from their standpoint, i.e. "sudden," the loss is covered under the policy.

"In interpreting the contested terms of the insurance policy, we are bound by the rules established for the construction of contracts generally." Koziol v. Peerless Insurance Co., 41 A.3d 647, 650 (R.I. 2012) (quoting Malo v. Aetna Casualty and Surety Co., 459 A.2d 954, 956 (R.I. 1983)). "It is well-settled that this Court 'shall not depart from the literal language of the policy absent a finding that the policy is ambiguous.'" Id. (quoting Lynch v. Spirit Rent-A-Car, Inc., 965 A.2d 417, 425 (R.I. 2009)). "Indeed, as this Court often has said, we shall 'refrain from

engaging in mental gymnastics or from stretching the imagination to read ambiguity into a policy where none is present.'" Id. at 651 (quoting Bliss Mine Road Condominium Association v. Nationwide Property and Casualty Insurance Co., 11 A.3d 1078, 1083 (R.I. 2010)).

It is clear to us that the literal language, specifically, "[w]e do not insure, however, for loss * * * [c]aused by * * * [s]mog, rust or other corrosion," clearly and unambiguously states that the policy does not cover against losses caused by corrosion. Merrimack presented evidence from Aegis and Taraco indicating that the leak in plaintiffs' oil feed line was caused by a slow, gradual corrosion. The plaintiffs, however, offered no evidence to the contrary. To wedge the loss resulting from the gradually corroded oil feed line into the category of "[s]udden and accidental tearing apart, cracking, burning or bulging of a steam or hot water heating system" would require the creation of an ambiguity where one does not exist.

Further, assuming arguendo that we were to adopt the plaintiffs' interpretation of Textron and determine that the loss was "sudden and accidental" from their perspective, the damage would nevertheless remain uncovered under the policy. The plain language of the policy protects against loss caused by the "[s]udden and accidental tearing apart, cracking, burning or bulging of a steam or hot water heating system." The plaintiffs, however, failed to present any evidence indicating that the loss was due to such a tearing apart, cracking, burning or bulging; therefore, whether or not the damage was sudden and accidental is of no moment. Because the undisputed evidence indicates that the damage to the plaintiffs' property was caused by corrosion—damage not covered by their insurance policy—there remain no genuine issues of material fact and Merrimack is entitled to judgment as a matter of law.

## IV

## Conclusion

For the reasons set forth above, the judgment of the Superior Court is affirmed, and the record of this case shall be returned thereto.



**RHODE ISLAND SUPREME COURT CLERK'S OFFICE**

*Clerk's Office Order/Opinion Cover Sheet*

**TITLE OF CASE:**     Wilfredo Nunez et al. v. Merrimack Mutual Fire Insurance Co.

**CASE NO:**     No. 2013-129-Appeal.
(PC 07-2434)

**COURT:**     Supreme Court

**DATE OPINION FILED:**   April 17, 2014

**JUSTICES:**     Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**WRITTEN BY:**     Chief Justice Paul A. Suttell

**SOURCE OF APPEAL:**     Providence County Superior Court

**JUDGE FROM LOWER COURT**:

Associate Justice Sarah Taft-Carter

**ATTORNEYS ON APPEAL:**

For Plaintiffs:  Fred L. Mason, Jr., Esq.

For Defendant:  Elizabeth A. Bourke, Esq.